**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CATHERINE MEAD,

Plaintiff,

v. Case No. 8:24-cv-2756-TPB-AEP

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

Defendant.
_______________________________________/

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on "Plaintiff's Motion for Summary Judgment" and "Defendant's Motion for Summary Judgment, Statement of Undisputed Material Fact, and Incorporated Memorandum of Law," both filed June 12, 2026. (Docs. 114; 115). Both parties filed responses in opposition, and Plaintiff filed a reply. (Docs. 117; 118; 119). Upon review of the motions, responses, reply, court file, and record, the Court finds as follows:

## Background

This case arises from the denial of long-term disability ("LTD") benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Catherine Mead worked for Evergreen Packaging LLC and was insured under Group Policy No. FLK-0980232 issued by Defendant Life Insurance Company of America.

Plaintiff worked for Evergreen for approximately 19 years. Her position as a package sealer/operator was classified as a "heavy" occupation, requiring her to exert "50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects." Her last day of work was April 6, 2020. The following day, Plaintiff sought short-term disability ("STD") benefits based on several medical conditions, including arthritis, lupus, and fibromyalgia. Her claim was approved, and she received STD benefits through October 11, 2020.

Plaintiff then requested transition to long-term disability ("LTD") benefits. On October 28, 2020, Defendant notified Plaintiff that it had approved her LTD claim effective October 12, 2020, because she was unable to perform the material duties of her own occupation. Under the policy, however, the applicable definition of disability changed after 24 months.[1] Beginning October 12, 2022, Plaintiff was required to establish that she was unable to perform the material duties of <u>any</u> occupation for which she was, or could reasonably become, qualified based on her education, training, and experience. In anticipation of that change, Defendant requested updated medical records and other information concerning Plaintiff's continued eligibility for benefits.

[1] The policy provides that for the first 24 months that benefits are payable, a claimant is disabled only "if, solely because of Injury or Sickness, he or she is unable to perform the material duties" of his or her own occupation, or "the occupation the claimant routinely performed at the time the disability began." *See* AR 1043, 2668. After the 24-month "own occ" period, a claimant is considered disabled only "if, solely due to Injury or Sickness, he or she is unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience[.]" *See* AR 2668. That period is referred to as the "any occ" period.

Defendant continued paying LTD benefits while it evaluated Plaintiff's eligibility under the "any occupation" standard. As part of that review, Defendant conducted a transferable-skills analysis and determined that Plaintiff could perform two sedentary occupations – bench assembler and industrial-order clerk. On December 13, 2023, Defendant notified Plaintiff that she no longer satisfied the policy's definition of disability and terminated her LTD benefits.

Plaintiff appealed that determination on February 20, 2024. During the appeal, Defendant obtained additional physician reviews and conducted further transferable skills analyses. Rehabilitation specialist Paul L. Wilson, MA, CRC, completed one such analysis on June 13, 2024, followed by additional analyses on July 16 and August 8, 2024. Each identified the same two sedentary occupations – industrial-order clerk and ampoule sealer – as occupations Plaintiff could perform. Dr. Louise Banks also completed an external physician appeals review on October 4, 2024.

On October 25, 2024, Defendant notified Plaintiff that its adverse benefit determination remained warranted, but afforded her until November 8, 2024, to submit additional evidence. Plaintiff advised Defendant on November 5th that she had no additional evidence to provide. Defendant then issued its final decision on November 8, 2024, upholding the termination of her LTD benefits.

Plaintiff filed this action on November 26, 2024, seeking benefits under 29 U.S.C. § 1132(a)(1)(B). The parties now move for summary judgment.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the moving party will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict on that issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition. *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

Defendant seeks summary judgment, arguing that its decision to deny Plaintiff's LTD claim was not *de novo* wrong and, alternatively, that reasonable grounds supported its decision. Plaintiff also moves for summary judgment, arguing that Defendant improperly terminated her benefits because it failed to adequately consider her education, training, and experience; the occupations identified by Defendant were inconsistent with her functional limitations; and one of those occupations is obsolete; and Defendant failed to disclose certain transferable-skills analyses during the administrative appeal.

### ***Standard of Review***

ERISA benefits cases differ from ordinary summary judgment proceedings in that the district court acts "more [as] an appellate tribunal than a trial court." *Graham v. Life Ins. Co. of North America*, 222 F. Supp. 3d 1129, 1136 (N.D. Ga.

2016) (quoting *Curran v. Kemper Nat. Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. 2005)). "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011); *see Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1312 (11th Cir. 2016); *O'Leary v. Aetna Life Ins. Co.*, No. 3:16-cv-389-RV/EMT, 2017 WL 6617052, at *1 (N.D. Fla. Oct. 19, 2017).

When reviewing an ERISA benefits determination, the district court performs the following analysis:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355 (citation omitted).

During the initial *de novo* review, Plaintiff bears the burden of establishing that she was disabled under the policy. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). If the Court reaches the arbitrary and capricious stage, Plaintiff bears the burden of establishing that Defendant's decision was arbitrary and capricious. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-96 (11th Cir. 2010). Under that deferential standard, the Court must affirm the administrator's decision if it was reasonable based on the available evidence, even if the Court would have reached a different decision in the first instance. *See Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

Although Plaintiff questions whether the policy's "satisfactory proof" provision independently confers discretion, the Court need not resolve that issue. The Appointment of Claim Fiduciary expressly identifies itself as a plan document and grants Defendant discretion to interpret the plan, determine eligibility for benefits, and make related factual findings. Plaintiff does not meaningfully dispute that this language confers discretionary authority. Accordingly, the Court need not decide whether Defendant's termination of Plaintiff's benefits was *de novo* wrong. Even assuming that it was, reasonable grounds supported Defendant's determination that Plaintiff no longer satisfied the policy's "any occupation" definition of disability.

***Consideration of Plaintiff's Education, Training, and Experience***

Plaintiff first argues that Defendant failed to adequately consider her education, training, and experience because the disability questionnaire containing that information was unavailable to the vocational reviewers who performed the

transferable-skills analyses. The record confirms that the questionnaire was contained in Defendant's claim file but was not among the materials reviewed in any of the four transferable-skills analyses. AR 1023, 1198, 1212, 1232.

The omission, however, does not establish that Defendant's ultimate benefits determination lacked a reasonable basis. The administrative record otherwise contained information concerning Plaintiff's educational and occupational background. Her education was documented in the Social Security Administration Disability Determination Transmittal. AR 3869. The transferable-skills analyses also identified Plaintiff's prior occupation as a package sealer/operator and considered the duties associated with that position. Moreover, the final appeal analysis explained that the identified occupations were "entry-level occupations that did not require specialized skills or training to be considered qualified." AR 1234.

Plaintiff emphasizes that the questionnaire reflected that she had no college education, had previously worked primarily in manual occupations, and had no work-related computer experience. But she does not identify any requirement of the two occupations that would render her unqualified based on those characteristics. Nor does the policy require that Plaintiff already possess every skill necessary to perform an identified occupation; it asks whether she is unable to perform an occupation for which she "is, or may reasonably become, qualified based on education, training, or experience."

The Court does not endorse Defendant's failure to provide the questionnaire to its vocational specialist, particularly where the document was contained within

its own claim file. But the policy required consideration of Plaintiff's education, training, and experience; it did not require Defendant to obtain that information from a particular form or source. Given the vocational information otherwise available and the limited training required for the identified occupations, the omission does not render Defendant's determination arbitrary and capricious.

***Plaintiff's Reaching Limitation and the Identified Occupations***

Plaintiff next argues that the occupations identified in the transferable-skills analyses were inconsistent with the functional limitations assessed by Defendant's own reviewing physicians. Specifically, Plaintiff relies on Dr. Mahdy Flores's assessment that Plaintiff could reach only "occasionally," meaning for one-third or less of an eight-hour workday. According to Plaintiff, the identified occupations require frequent reaching and therefore exceed that limitation.

The administrative record contains differing assessments of Plaintiff's reaching capacity. Dr. Alexis Hernandez Bonilla did not assess a specific reaching restriction and concluded that, apart from certain limitations associated with fibromyalgia, Plaintiff was "fully capable of performing regular activities." AR 1196. Dr. Alfred Becker subsequently concluded that Plaintiff's use of her arms in a forward motion at desk level, below waist level, and above shoulder level was unrestricted. AR 1218-19. Dr. Flores, on the other hand, assessed Plaintiff as capable of reaching only occasionally, although Dr. Flores later concluded that Plaintiff demonstrated the maximum sustained work capability for sedentary work. AR 1257, 1261. Finally, Dr. Louise Banks concluded that the record did not support

a reaching restriction, noting that Plaintiff demonstrated constant reaching at desk level and frequent overhead reaching. AR 1270.

Plaintiff correctly identifies a tension between Dr. Flores's reaching restriction and the August 8, 2024, analysis. Defendant instructed the vocational specialist performing that analysis to use the most restrictive limitations identified by the physicians whose opinions were then under consideration. AR 1229. Although that included Dr. Flores's occasional-reaching limitation, the analysis nevertheless identified industrial-order clerk and ampoule sealer as occupations Plaintiff could perform but did not explain that apparent inconsistency.

But Defendant's administrative review did not end with the August analysis. Before issuing its final determination, Defendant obtained an additional external physician review from Dr. Louise Banks, who concluded that no restriction on reaching was supported. AR 1270. Dr. Banks's opinion was consistent with other medical evidence in the record. Defendant expressly considered Dr. Banks's later assessment in its final determination and noted that she found Plaintiff unrestricted in reaching. AR 1326. Defendant then identified industrial-order clerk and ampoule sealer as appropriate occupations and concluded, based on the medical and vocational evaluations, that Plaintiff did not satisfy the policy's definition of disability. AR 1326-27.

Consequently, the record did not uniformly establish that Plaintiff was limited to occasional reaching. Although Plaintiff emphasizes Dr. Flores's more restrictive assessment, Defendant had other medical evidence supporting a finding that no such restriction was warranted. An administrator does not act arbitrarily

and capriciously merely because the administrative record contains conflicting medical evidence. *See Goros v. Sun Life Assurance Co. of Can.*, No. 2:16-cv-233-FtM-38CM, 2017 WL 4861458, at *15 (M.D. Fla. June 28, 2017) (explaining that where evidence supports competing conclusions, the plan administrator weighs and resolves that evidence and may reasonably credit one physician's opinion over another), *report and recommendation adopted,* 2017 WL 3705836 (M.D. Fla. Aug. 28, 2017); *see also Gomez v. Neighborhood Health P'Ship, Inc.*, No. 24-11898, 2025 WL 2658881, at *4 (11th Cir. 2025) (recognizing that under deferential review, a plan administrator may choose between competing medical opinions when its choice is rationally supported by the record). Defendant therefore had a reasonable evidentiary basis to conclude that Plaintiff could satisfy the reaching requirements of the occupations identified by its vocational reviewers. That other evidence in the record could support a more restrictive assessment does not render Defendant's resolution of the conflicting evidence arbitrary and capricious.

***Obsolescence of the Ampoule Sealer Position***

Plaintiff also challenges Defendant's reliance on ampoule sealer as an occupation she could perform, arguing that the occupation is obsolete and does not exist in sufficient numbers in the national economy.

Unlike the Social Security disability framework, ERISA does not itself require a plan administrator to establish that a particular number of jobs exists in the national economy. *See Oliver v. Aetna Life Ins. Co.*, 613 F. App'x 892, 897 (11th Cir. 2015); *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1293 (M.D. Fla. 2017). Accordingly, the fact that the ampoule sealer occupation may not satisfy standards

governing occupational availability in the Social Security context does not establish that Defendant's benefits determination was unreasonable.

Moreover, Defendant's determination did not rest exclusively on Plaintiff's ability to work as an ampoule sealer. Rather, the transferable-skills analyses identified a second sedentary occupation that Plaintiff could perform. Therefore, even assuming that Defendant should not have relied on ampoule sealer, Plaintiff has not shown that the asserted obsolescence of that occupation undermines Defendant's ultimate determination that she could perform an occupation within the meaning of the policy.

***Disclosure of the Transferable-Skills Analyses***

Plaintiff also argues that Defendant violated 29 C.F.R. § 2560.503-1(h)(4)(i) by failing to provide her with the June 13th and July 16th, 2024, analyses before issuing its final decision. Defendant provided Plaintiff with only the final August 8th analysis during the administrative appeal.

Even assuming that Defendant was required to disclose the two earlier analyses, Plaintiff has not shown that the omission deprived her of a full and fair review or otherwise affected the benefits determination. The June and July analyses were intermediate iterations of the vocational review: the June analysis incorporated Dr. Bonilla's medical review, the July analysis added Dr. Flores's review, and the August analysis incorporated the then-existing reviews of Drs. Bonilla, Flores, and Becker. AR 1198, 1212, 1232-34. All three analyses identified the same two occupations – industrial-order clerk and ampoule sealer.

Defendant provided Plaintiff with the final August analysis before issuing its final determination and afforded her an opportunity to respond to the evidence supporting the proposed adverse decision. Plaintiff subsequently advised Defendant that she had no additional evidence to submit. Because the undisclosed analyses identified no different occupations and were followed by the more comprehensive analysis that Defendant disclosed, Plaintiff has not shown that the omission affected her ability to respond to Defendant's vocational determination or otherwise prejudiced the administrative review.

***Defendant's Conflict of Interest***

Finally, Plaintiff points out that Defendant operated under a structural conflict of interest because it both determined eligibility for benefits and paid benefits from its own funds. *See Blankenship*, 644 F.3d at 1355. Courts have determined that a conflict of this nature is a factor in determining whether Defendant's decision was arbitrary and capricious, but it does not alter the applicable standard of review. *See id*.

Plaintiff identifies no specific evidence suggesting that Defendant's financial interest influenced its decision to terminate her benefits. Rather, the administrative record reflects that Defendant obtained multiple medical reviews and transferable-skills analyses, obtained an additional external physician review during the administrative appeal, and afforded Plaintiff an opportunity to submit additional evidence before issuing its final determination. Under these circumstances, Defendant's structural conflict does not render its otherwise reasonable benefits determination arbitrary and capricious.

## Conclusion

Even assuming that Defendant's determination was *de novo* wrong, reasonable grounds supported its conclusion that Plaintiff did not satisfy the policy's "any occupation" definition of disability. Defendant's structural conflict of interest does not alter that conclusion. Defendant's motion for summary judgment is therefore granted, and Plaintiff's motion for summary judgment is denied.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiff's Motion for Summary Judgment" (Doc. 114) is hereby **DENIED**.

(2) "Defendant's Motion for Summary Judgment, Statement of Undisputed Material Fact, and Incorporated Memorandum of Law" (Doc. 115) is hereby **GRANTED.**

(3) The Clerk is directed to enter judgment in favor of Defendant Life Insurance Company of North America, and against Plaintiff Catherine Mead.

(4) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 20th day of August, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE